## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RANDOLPH ARMSTEAD**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 17-5947**

**KEITH DEVILLE, WARDEN**                               **SECTION "G"(4)**

## REPORT AND RECOMMENDATION

The petitioner, Randolph Armstead ("Armstead"), filed a petition for federal habeas corpus relief under 28 U.S.C. § 2254 that was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.

On May 16, 2018, the undersigned Magistrate Judge issued a Report and Recommendation recommending dismissal of Armstead's petition for failure to exhaust state court remedies unless Armstead dismissed, or amended the petition to exclude, the two unexhausted claims.[1]  After review of Armstead's objections, the District Judge found that exhaustion was completed sometime after the Report and Recommendation was entered and referred the matter back to the undersigned magistrate judge for issuance of a report and recommendation on the remaining claims.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[3]

---

[1] Rec. Doc. No. 13.

[2] Rec. Doc. Nos. 14, 17.

[3] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

## I.    **Factual and Procedural Background**

Armstead was indicted by an Orleans Parish Grand Jury for one count of aggravated rape of T.B. and one count of second degree kidnapping of T.B.[4]  The first count was amended on September 2, 2012, to felony carnal knowledge of a juvenile.[5]  The State entered a nolle prosequi as to the second count.[6]

The record reflects that, on November 18, 2001, T.B., who was 16 years old, was seen at University Hospital for a sexual assault examination after she reported being raped.[7]  T.B. initially told the attending nurse that two boys, whom she identified by name, had threatened and attacked her.  T.B. later told Detective Clifton Neely of the New Orleans Police Department ("NOPD") a different version of the events but was consistent in her description of where it occurred.  Detective Neely was unable to develop a suspect, because of the inconsistencies in T.B.'s statements and those of her mother.  Based on this, the Detective suspected that the allegations were "unfounded," and he eventually administratively closed the case.  Because the case was closed, the seal on the sexual assault examination materials ("rape kit") was never broken or tested for DNA.

The rape kit remained sealed and untested in Central Evidence and Property until 2004, when the kit was sent to ReliaGene, a private DNA laboratory in New Orleans, in connection with a federally funded program intended to clear up the City's backlog of untested rape examination kits.  The results were recorded, and the case was considered a closed, "cold case" until 2007.  At

---

[4]St. Rec. Vol. 1 of 7, Indictment, 12/16/10.  Louisiana law requires the use of initials to identify minors and victims of sex crimes, and this Court will abide by that preference.  La. Rev. Stat. Ann. § 46:1844W.

[5]St. Rec. Vol. 1 of 7, Indictment, 12/16/10 (amended 9/2/12).

[6]St. Rec. Vol. 1 of 7, Minute Entry, 2/23/17.

[7]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal.  *State v. Armstead*, 159 So.3d 502, 508-10 (La. App. 4th Cir. 2015); St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0036, pp. 4-7, 1/28/15.

that point, Detective Francis Jarrott received correspondence from the NOPD's Criminal Investigation Division stating that there had been a CODIS[8] hit for Randolph Armstead, who would have been 21 years old in 2001 when the alleged rape occurred.

When interviewed by Detective Jarrott in November of 2007, T.B. indicated that she knew Armstead and that she had not had consensual sex with him. Armstead was arrested and with a warrant, a buccal swab sample was taken and again confirmed a match with T.B.'s rape kit.

Armstead was tried before a jury on March 26, 2013 and found guilty of the amended charge of felony carnal knowledge of a juvenile.[9] At a May 3, 2013, hearing, the Trial Court denied Armstead's motion for new trial, which was based on a recanting affidavit and testimony from the victim.[10] The Court sentenced Armstead that day to serve 10 years in prison.[11]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Armstead's counsel asserted six errors:[12] (1) the evidence was insufficient to support the verdict; (2) the Trial Court erred by allowing the trial to proceed without the testimony of the victim; (3) the Trial Court erred by allowing the trial to proceed without the testimony of the original DNA analyst; (4) the Trial Court erred by reversing its own ruling on the motion to quash; (5) the Trial Court erred by excluding the statements of the victim's mother which were exceptions to the hearsay rule; and (6) the Trial Court erred by denying the motion for new trial where the victim testified that she was

---

[8]CODIS is the acronym for the Combined DNA Index System.  https://www.fbi.gov.

[9]St. Rec. Vol. 1 of 7, Trial Minutes (3 pages), 3/26/13; St. Rec. Vol. 2 of 7, Trial Transcript, 3/26/13.

[10]St. Rec. Vol. 1 of 7, Hearing Minutes, 5/3/13; Motion for New Trial (undated); St. Rec. Vol. 2 of 7, Sentencing Transcript, 5/3/13.

[11]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/3/13; St. Rec. Vol. 2 of 7, Sentencing Transcript, 5/3/13. The State filed a multiple bill at this hearing, but it was not pursued.

[12]St. Rec. Vol. 5 of 7, Appeal Brief, 2014-KA-0036, undated.

told by someone in the District Attorney's office not to come to court on the day of trial because there would be jury selection all day. Armstead's counsel also filed a supplemental brief providing additional argument regarding the fourth claim.[13]

In its first opinion, the Louisiana Fourth Circuit determined that the Trial Court's initial grant of Armstead's motion to quash the indictment divested the court of jurisdiction, leaving it with no authority to reverse itself or conduct the trial.[14] The Louisiana Supreme Court, however, granted the State's subsequent writ application, reversed the appellate court, and reinstated Armstead's conviction and sentence.[15] The matter was later remanded to the Louisiana Fourth Circuit to consider Armstead's remaining claims on appeal.[16]

On January 28, 2015, the Louisiana Fourth Circuit issued a second opinion and affirmed Armstead's conviction and sentence finding no merit in five of the claims and finding that the third claim, challenging the lack of testimony from the original DNA analyst, was not preserved for appeal by timely objection.[17]

In the Louisiana Supreme Court, Armstead's counsel asserted only four of the issues, specifically:[18] (1) the Trial Court erred by allowing the trial to proceed without the testimony of the victim; (2) the Trial Court erred by excluding the statements of the victim's mother which were

---

[13]St. Rec. Vol. 5 of 7, Supplemental Brief, 2014-KA-0036, 4/16/14.

[14]*State v. Armstead*, 144 So.3d 66 (La. App. 4th Cir. 2014); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2014-KA-0036, 6/4/14.

[15]*State v. Armstead*, 147 So.3d 162 (La. 2014); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2014-K-1365, 9/12/14; La. S. Ct. Writ Application, 14-K-1365, 6/27/14.

[16]*State v. Armstead*, 153 So.3d 998 (La. 2014); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2014-K-1365, 11/21/14; Motion to Remand, 14-K-1365, 9/16/14.

[17]*Armstead*, 159 So.3d at 502; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0036, 1/28/15.

[18]St. Rec. Vol. 6 of 7, La. S. Ct. Writ Application, 2014-K-1365, 2/26/15.

exceptions to the hearsay rule; (3) the Trial Court erred by denying the motion for new trial where the victim testified that she was told by someone in the District Attorney's office not to come to court on the day of trial because there would be jury selection all day; and (4) the evidence was insufficient to support the conviction.  The Louisiana Supreme Court denied the writ application without stated reasons on January 8, 2016.[19]

Armstead's conviction was final under federal law ninety (90) days later, on April 7, 2016, when he did not file a writ application with the United States Supreme Court.  *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On May 6, 2016, Armstead signed and submitted an application for post-conviction relief to the Trial Court asserting two grounds for relief:[20] (1) his counsel was ineffective when she did not appeal the Trial Court's reversal of its ruling on the motion to quash; and (2) the Trial Court was without jurisdiction to grant the State's request to appeal the granting of the motion to quash. The Trial Court summarily denied relief on September 9, 2016.[21]

The Louisiana Fourth Circuit denied Armstead's related and untimely[22] writ application without stated reasons on February 3, 2017.[23]

---

[19]*State v. Armstead*, 184 So.3d 692 (La. 2016); St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2015-K-0392, 1/8/16.

[20]St. Rec. Vol. 7 of 7, Application for Post-Conviction Relief, dated 5/6/16 (no file stamp).

[21]St. Rec. Vol. 7 of 7, Trial Court Order, 9/9/16.  On September 29, 2016, the Louisiana Fourth Circuit denied Armstead's related mandamus application as moot.  St. Rec. Vol. 7 of 7, 4th Cir. Order, 2016-K-0956, 9/29/16.  His application for copies was denied on December 12, 2016.  St. Rec. Vol. 7 of 7, 4th Cir. Order, 2016-K-1179, 12/12/16.

[22]La. App. R. 4-3 provides that a petitioner must file a writ application within 30 days of the issuance of a trial court's order.  Armstead did not meet this deadline.  The record reflects that Armstead knew and had a copy of the Trial Court's ruling before October 30, 2016, leaving no excuse for his untimely filing. St. Rec. Vol. 7 of 7, Letter to the Clerk, 10/30/2016 (stating he wrote a letter 10-days earlier).  Nevertheless, the Louisiana Fourth Circuit later ordered that he be provided a copy of that ruling.  St. Rec. Vol. 7 of 7, 4th Cir. Order, 2016-K-1179, 11/22/16.  This order was issued almost two months before Armstead filed his writ application.

[23]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2017-K-0083, 2/3/17; 4th Cir. Writ Application, 2017-K-0083, dated

On February 10, 2017, Armstead signed and submitted a writ application to the Louisiana Supreme Court seeking review of the appellate decision.[24]  On May 18, 2018, the Court denied Armstead's application finding that he failed to show ineffective assistance under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and his other claim was repetitive, citing La. Code Crim. P. art. 930.4.[25]

## II.   Federal Habeas Petition

On June 20, 2017, the clerk of this Court filed Armstead's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[26] (1) the Trial Court erred in allowing trial to proceed without the testimony of the victim; (2) the Trial Court erred by excluding the statements of the victim's mother which were exceptions to the hearsay rule; (3) the Trial Court erred by denying the motion for new trial when the victim testified that she was told by someone in the District Attorney's office not to come to court on the day of trial because there would be jury selection all day; (4) the evidence was insufficient to support the conviction; (5) his counsel was ineffective because she did not appeal the Trial Court's reversal of its ruling on the motion to quash; and (6) the Trial Court had no jurisdiction to grant the State's request to appeal the granting of the motion to quash.

The State filed an answer and memorandum in opposition to the petition asserting that Armstead failed to exhaust state court remedies, because of his then-pending Louisiana Supreme Court writ application.

---

1/20/17.

[24]St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 17-KH-367, 3/1/17 (dated 2/10/17).

[25]*State ex rel. Armstead v. State*, 242 So.3d 1221 (La. 2018); Rec. Doc. No. 14-1.

[26]Rec. Doc. No. 1.

III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[27] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on June 14, 2017.[28]  The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The exhaustion defense asserted by the State has already been resolved.  The Court will address Armstead's claims.

IV.    **Standards of a Merits Review of the Remaining Claims**

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000).  It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination

---

[27]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[28]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Armstead's petition on June 20, 2017, when it was received, and opened the matter on June 22, 2017, when pauper status was granted.  Armstead dated his signature on the complaint on June 14, 2017, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this Court.

of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question."  *White v. Woodall*, 572 U.S. 415, 427 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'"  *White*, 572 U.S. at 426 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law

if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 572 U.S. at 426-27; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**V.    Analysis**

**A.    Trial without the Victim's Testimony (Claim No. 1)**

Armstead alleges that the state trial court erred when it allowed trial to proceed without the victim present to testify. The Louisiana Fourth Circuit addressed this issue on direct appeal. The Court held that the trial on the reduced charge without the victim present did not violate the

Confrontation Clause, because the conviction was not based on the victim's statements (and none were admitted) but on the age difference and the DNA evidence.[29]  This was the last reasoned opinion on the claim.  *Wilson v. Sellers*, __ U.S. __, 138 S. Ct. 1188, 1192 (2018) ("We hold that the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale . . . then presume that the unexplained decision adopted the same reasoning."); *see also*, *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (same as to imposition of procedural default).

A Confrontation Clause claim presents a mixed question of law and fact.  *Fratta v. Quarterman*, 536 F.3d 485, 499 (5th Cir. 2008).  The Court must defer to the state court's decision rejecting the claim unless the decision was contrary to or involved an unreasonable application of Supreme Court law.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  *Davis v. Washington*, 547 U.S. 813, 821 (2006).  The United States Supreme Court has held that the Confrontation Clause prohibits "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004); *Melendez-Diaz v. Mass.*, 557 U.S. 305, 309-310 (2009).  The Court further held that this prohibition applies only to the admissibility of testimonial statements.  *Crawford*, 541 U.S. at 51.  "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause."  *Davis*, 547 U.S. at 821.

---

[29]*Armstead*, 159 So.3d at 517-18; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0036, pp. 22-24, 1/28/15.

Thus, the primary purpose of the confrontation right is to provide a defendant with the opportunity to cross-examine his accuser before the jury, so that the jury can assess the accuser's credibility. *Davis v. Alaska*, 415 U.S. 308, 315 (1973); *Mattox v. United States*, 156 U.S. 237, 242-43 (1895). However, the confrontation right "does not . . . require the government to produce witnesses whose statements are not used at trial … ." (citation omitted) *Pennsylvania v. Ritchie*, 480 U.S. 39, 54 n.10 (1987); *Bernier v. Scott*, 43 F.3d 670, 1994 WL 725098, at *2 (5th Cir. Dec. 21, 1994) (Table, Text in Westlaw) (quoting *United States v. Sanchez*, 988 F.2d 21384, 1392 (5th Cir. 1993)); *cf. Shaw v. Collins*, 5 F.3d 128 (5th Cir. 1993) (a defendant's confrontation rights were violated when the victim's statements were admitted, and the victim did not testify); *see also Lowery v. Collins*, 988 F.2d 1364, 1369 (5th Cir. 1993) (same). Thus, a defendant's confrontation rights are <u>not</u> violated simply, because the victim did not testify, but only when the victim's out-of-court statements are admitted into evidence without an opportunity for cross-examination. *Bernier*, 1994 WL 725098, at *2 (no confrontation right violation where prosecutor did not call the victim nor did it introduce any of his out-of-court statements); *see Hubbard v. Miss. Dept. of Corr.*, No. 07-349, 2010WL2671930, at *18-19 (S.D. Miss. May 27, 2010).

In this case, T.B. was not present at trial, and this was known to the defense before trial began.[30]  During trial, the State also did not rely on or introduce any statements made by T.B. Based on the federal law cited above, because the absent-victim's statements were not presented at trial, Armstead's confrontation rights were not implicated or violated by the victim's absence.

The state courts' denial of relief on this issue was not contrary or an unreasonable application of Supreme Court law.  Armstead is not entitled to relief on this claim.

---

[30]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 6-7, 3/26/13; *see also Armstead*, 159 So.3d at 517-18; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0036, pp. 22-24, 1/28/15.

### B.    Exclusion of the Mother's Testimony (Claim No. 2)

Armstead alleges that the state trial court erred by excluding the statements of the victim's mother which could have been admitted as exceptions to the hearsay rule.  Armstead argues that the mother told Detective Neely that T.B. told her that she lied about the alleged rape to cover-up how she contracted a sexually transmitted disease or "STD."  This was in part the basis for the detective closing the case as "unfounded."  Armstead claims that the state trial court should have allowed him to introduce the mother's statements (or question the detective about them) at trial under Louisiana's statements-against-interest exception to the hearsay rule.

Armstead's appointed counsel asserted this claim on direct appeal.  The Louisiana Fourth Circuit affirmed the state trial court's refusal to allow testimony regarding the mother's statement to Detective Neely.  The Court held that Armstead failed to prove that the mother was unavailable to testify to invoke the exception to Louisiana's hearsay rule under La. Code Ev. arts. 801, 804 and otherwise did not seek to subpoena her for the defense.[31]  The Court further held that Armstead also did not meet the exception under Article 804(B)(3), because Armstead did not establish that corroborating circumstances indicated the trustworthiness of the mother's statement.

The admissibility of testimony is a matter of state law that is not subject to re-examination by this federal court on habeas review.  It is not the province of a federal habeas court to asses a state court's application of state law or determination of state-law questions on the admissibility of evidence.  *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law.") (internal quotation omitted).  Instead, "a federal court may grant habeas relief based on an erroneous state court evidentiary ruling only if the ruling

---

[31]*Armstead*, 159 So.3d at 517-17; St. Rec. Vol. 6 of 7, 4th Cir. Opinion, 2014-KA-0036, pp. 19-22, 1/28/15.

also violates a specific federal constitutional right or renders the petitioner's trial fundamentally unfair." *Gochicoa v. Johnson*, 118 F.3d 440, 446 (5th Cir. 1997).  To do so, the petitioner must demonstrate that the error had a substantial and injurious effect on the jury's verdict in violation of due process.  *See Fry v. Pliler*, 551 U.S. 112 (2007); *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

The record in this case reflects that, prior to trial, the State filed a motion in limine to preclude any reference at trial to the victim's prior sexual activity in accordance with Louisiana law.  The state trial court heard argument from counsel with specific reference to the mother's statement to Detective Neely that T.B. lied about the rape to explain how she contracted an STD. This apparently led, at least in part, to Detective Neely's decision not to pursue further investigation; instead, he closed the case noting it was unfounded.  The state trial court granted the State's motion finding that the information regarding the STD was precluded as irrelevant and unnecessarily disclosed the victim's unrelated sexual activity and any statement by the mother about what the victim told her was hearsay.  The Court rejected defense counsel's argument that the mother's statement was not hearsay or that it met the statement against interest exception to the hearsay rule.

Armstead has not established an error under state law.  The state trial and appellate courts determined that the mother's statement to police did not constitute an exception to Louisiana's hearsay exclusion rules.  No state court has declared an error was made.  As the state courts concluded, the decision met with the dictates of Louisiana's evidentiary rules.  Armstead did not establish that the mother was not available to testify about her own statements, nor did he or his counsel indicate any effort to secure her presence at trial.  In addition, Armstead has pointed to nothing to establish, under La. Code Ev. art. 803(B)(3), the trustworthiness of the mother's out-

of-court statement in which she claimed her daughter told her she lied about the rape. Thus, the preclusion was proper under state law. Without an error under state law, Armstead "has no basis for any alleged due process violation." *See McClain v. Cain*, No. 14-1452, 2015 WL 4509666, at *14 (E.D. La. July 24, 2015).

Furthermore, even if due process is considered under federal law, Armstead has not established that the exclusion of the specifics of the mother's statement had an injurious effect on the verdict. A due process violation exists when the wrongfully admitted testimony "played a crucial, critical, and highly significant role in the trial" in a manner that unfairly impacted the jury's verdict. *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998). The question of whether a petitioner's due process rights were violated is a mixed question of law and fact. *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *see Wilkerson v. Cain*, 233 F.3d 886, 890 (5th Cir. 2000) (issues of due process present mixed questions of law and fact.). On habeas review, a federal court must determine if the state courts' denial of relief on the issue was contrary to or involved an unreasonable application of Supreme Court precedent.

At trial, Armstead's counsel was able to question Detective Neely to establish that he closed the case as unfounded based on discussions with T.B.'s mother. The jury therefore heard that the detective believed the case was baseless because of statements by T.B.'s mother. Armstead has not demonstrated that the substance of her statements would have influenced the jury, except to imply that T.B. was sexually active, something he was not allowed to do under state law. The defense's goal was to place before the jury the fact that Detective Neely thought the claims were baseless, and that goal was met. Armstead, therefore, has not demonstrated that the state trial court's evidentiary ruling had any adverse impact on his trial or the jury's verdict.

Armstead has not shown that the state courts' denial of relief was contrary to or an unreasonable application of federal law. He is not entitled to relief on this issue.

### C.   Denial of the Motion for New Trial (Claim No. 3)

Armstead claims that state trial court erred by denying the motion for new trial when the victim testified at the post-conviction hearing that she was told not to come to court on the day of trial because there would be jury selection all day. Armstead asserted this claim on direct appeal. The Louisiana Fourth Circuit denied relief holding, as to this argument, that Armstead failed to prove grounds for a new trial. The Court found that the victim's testimony was not relevant to his guilt or innocence on the charge of felony carnal knowledge of a juvenile. This was the last reasoned opinion on the issue.[32] *Wilson*.

As an initial matter, Armstead's argument that the state trial court erred when it denied his motion for a new trial does not involve questions of federal or constitutional law, and review of such claims is not proper on habeas review. *Haygood v. Quarterman*, 239 F. App'x 39, 42 (5th Cir. 2007) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991)) (state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding," and instead is limited to review of questions of federal constitutional dimensions.

---

[32]Armstead asserted the issue on post-conviction review. The Louisiana Supreme Court denied relief on the issue finding it repetitive of the matter addressed on direct appeal, citing La. Code Crim. P. art. 930.4. Article 930.4(A) precludes post-conviction review in the Louisiana courts for claims already "fully litigated" on direct appeal. *Bennett v. Whitley*, 41 F.3d 1581, 1583 (5th Cir. 1994). This rule presumes that the claims have been fully reviewed by the state appellate court on direct appeal and by the Louisiana Supreme Court and therefore need not be considered again on post-conviction application. *Id.* However, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." *Id.* The bar does not preclude federal habeas review of claims that were considered on state direct appeal. This court simply "look[s]-through" the ruling on collateral review and considers the direct appeal reasoning on the claim. *Id.* at 1582-83.

*Wilkerson*, 16 F.3d at 67; *Swarthout*, 562 U.S. at 219 (federal habeas review does not lie for errors of state law).

In this case, the state courts and this federal habeas court have addressed Armstead's claim that he was denied due process by the victim's absence from trial and found that he has not established a constitutional violation or that the denial of relief was contrary to Supreme Court precedent. He presents the same argument here and it fairs no better. The victim's decision not to appear at trial did not change the evidence presented at trial demonstrating that 20-year old Armstead had sexual intercourse with a 16-year old to whom he was not married to warrant a new trial.

Armstead has failed to prove a constitutional violation in the failure of the victim to appear or testify at his trial. The denial of relief on this companion issue arising from the denial of a new trial is not contrary to or an unreasonable application of federal law. He is not entitled to relief on this claim.

### D.    <u>Sufficiency of the Evidence (Claim No. 4)</u>

Armstead claims that the evidence was insufficient to support the conviction, because the jury should not have believed that he was the perpetrator when the victim named two other people whom she said went to her school, Detective Neely closed the case as unfounded, and the DNA evidence and the testing were unreliable.

On direct appeal, the Louisiana Fourth Circuit denied relief citing *Jackson v. Virginia*, 443 U.S. 307 (1979), and related state case law. The Court held that the evidence was sufficient to establish that Armstead was over 19 and T.B. was 16 when he had sexual intercourse with T.B. when they were not married. His identity and the sexual intercourse were established by the DNA

evidence and the presence of his sperm in T.B.'s vagina. This was the last reasoned opinion on the issue. *Wilson*.

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008); *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to or involved an unreasonable application of Supreme Court law. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson*, relied on by the state appellate court, which requires a court to determine whether, after viewing the record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir. 2011). Louisiana law allows for a crime to be proven by both direct and circumstantial evidence.[33]

The Court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court is to consider all of the trial evidence as a whole under Jackson ); *Johnson v. Cain*,

---

[33]Under Louisiana law, "[t]he rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. Ann. § 15:438. However, on federal habeas corpus review, the court does not apply this state law, "reasonable hypothesis" standard, and instead must apply the *Jackson* and AEDPA standards of review. *See Gilley v. Collins*, 968 F.2d 465, 468 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent Phillips relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the *Jackson* standard to be applied instead of a sufficiency of the evidence test ... . Ultimately, all evidence, both direct and circumstantial, must be sufficient under *Jackson* to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt." *State v. Porretto*, 468 So. 2d 1142, 1146 (La. 1985); accord *State v. Williams*, 693 So. 2d 204, 209 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." *State v. Maxie*, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord *Williams*, 693 So. 2d at 209. The appropriate standard for this Court on habeas review remains *Jackson*.

347 F. App'x 89, 91 (5th Cir. 2009) (quoting *Jackson*, 443 U.S. at 324) (*Jackson* standard relies "upon the record evidence adduced at the trial.").  The review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury.  *United States v. Young*, 107 F. App'x 442, 443 (5th Cir. 2004) (per curiam) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993)); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.")  A reviewing federal habeas court, therefore, is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder.  *Weeks v. Scott*, 55 F.3d 1059, 1062 (1995) (citing *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985)).  All credibility choices and conflicting inferences must be resolved in favor of the verdict.  *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005).

In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'"  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (quoting *Herrera v. Collins*, 506 U.S. 390, 402 (1993)).  Thus, to determine whether the commission of a crime is adequately supported by the record, a court must review the substantive elements of the crime as defined by state law.  *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16).

Armstead was charged with and found guilty of felony carnal knowledge of a juvenile. Under Louisiana law at the time, felony carnal knowledge of a juvenile occurred "when . . . [a] person who is nineteen years of age or older has sexual intercourse, with consent, with a person who is twelve years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender . . ." La. Rev. Stat. Ann. § 14:80(A)(1) (West 2001).  Louisiana law also

defined "sexual intercourse" to include "anal, oral, or vaginal sexual intercourse." La. Rev. Stat. Ann. § 14:80(B) (West 2001). In addition, "[l]ack of knowledge of the juvenile's age shall not be a defense. Emission is not necessary, and penetration, however slight, is sufficient to complete the crime." La. Rev. Stat. Ann. § 14:80(C) (West 2001).

In this case, Armstead challenges the jury's determination that he had sexual intercourse with T.B. as an element of the felony carnal knowledge crime. He specifically argues that the jury unreasonably rejected the victim's original statement that two of her schoolmates raped her, tending to show he was not involved, and in believing the DNA results from an unreliable laboratory, tending to prove that he was involved. However, it is not the province of this federal habeas court to reconsider the credibility determinations made or to reweigh the evidence considered by the jury as the factfinder. *Weeks*, 55 F.3d at 1062; *see Jackson*, 443 U.S. at 319.

The jury was well-within the ambit of its authority to resolve and consider the significant amount of evidence brought before it that proved Armstead had sexual intercourse with T.B. This included the jury's consideration of the detectives' testimony that T.B. changed the details of her story several times, including the perpetrators and what happened to her the night of sex crime.[34] The jury also heard lengthy testimony from several witnesses about the retention of the rape kit, the DNA testing proving Armstead's involvement, the reliability of the testing, and other relevant information about the reliability of the testing lab itself.[35] It was more than reasonable for the jury to credit that testimony and resolve that Armstead, who was over age 19, had sexual intercourse (established by the presence of his sperm/DNA in her vagina) with T.B., who was age 16.[36]

---

[34]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 20-21, 22-24, 28-29 (Detective Neely), 3/26/13.

[35]*Id*., pp. 33-43, 74-142, 148-152, 156-162 (sexual assault nurse exam and DNA experts).

[36]This Court need not consider the victim's consent as part of its *Jackson* review. The state trial court instructed the jury that proof of consent was not a required element of felony carnal knowledge. *Id*., p. 172. On direct appeal, the Louisiana Fourth Circuit agreed, citing *State v. Smith*, 649 So.2d 145, 146 (La. App. 2nd Cir. 1995). The

For these reasons, Armstead has failed to establish that the denial of relief on this claim was contrary to or an unreasonable application of *Jackson*. He is not entitled to relief on this issue.

### E.    Effective Assistance of Counsel (Claim No. 5)

Under a broad reading, Armstead appears to assert that his counsel was ineffective because she did not file a pretrial appeal after the state trial court reversed itself and denied the motion to quash the indictment. Armstead first asserted this claim in his application for post-conviction relief. The Louisiana Supreme Court provided the last reasoned decision denying relief on the showing made, citing *Strickland*.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 333, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's

---

Louisiana Supreme Court affirmed that ruling without further comment. *Armstead*, 184 So.3d at 692; St. Rec. Vol. 6 of 7, La. S. Ct. Order, 2015-K-0392, 1/8/16.

representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Id*., 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689).  "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689).  As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise.  *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

To prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at 694).  This standard requires a "substantial," not

just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. To determine whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2). This Court must also apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591. In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236-37; *Clark v. Johnson*, 227 F.3d 273, 282-83 (5th Cir. 2000). Tactical decisions, when supported by the circumstances, are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

The denial of effective assistance of counsel under *Strickland* is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question before the Court is whether the state courts' denial of relief on these claims was contrary to or an unreasonable application of United States Supreme Court precedent.

As an initial matter, Armstead has asserted a vague and conclusory claim which in and of itself is insufficient to support a claim under *Strickland*. *See Miller*, 200 F.3d at 282 (conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.). Nevertheless, broadly construing his arguments, the record fails to establish that he received ineffective assistance.

The record reflects that, on January 21, 2011, Armstead's counsel filed motions for speedy trial and to quash the indictment.[37] Counsel later withdrew the motion to quash and re-asserted

---

[37]St. Rec. Vol. 1 of 7, Minutes, 6/21/11; Minutes, 7/14/11. For the most concise pretrial procedural history on these matters, see St. Rec. Vol. 3 of 7, 4th Cir. Writ Application, 2011-K-0865, pp. 4-6, 6/29/11,

the speedy trial motion. On June 7, 2011, the parties appeared before the state trial court for the scheduled jury trial and defense counsel filed a motion to dismiss the indictment citing speedy trial arguments.[38]  On June 21, 2011, the state trial court did not dismiss the indictment but granted Armstead release on bond pending trial.[39]  The State immediately sought review in the Louisiana Fourth Circuit, which was denied.[40]  On July 14, 2011, the Louisiana Supreme Court also denied relief.[41]

On September 25, 2012, the State amended the indictment to reduce the aggravated rape charge to felony carnal knowledge of a juvenile.[42]  As the matter proceeded to jury selection that day, Armstead's counsel orally moved to quash the indictment as untimely prosecuted on the felony carnal knowledge charge outside of the statutory three-year limitations period.[43]  The state trial court granted the motion subject to the filing of a written motion (which later was filed) and scheduled a hearing on the State's request that it reconsider the motion to quash.[44]  The Court also granted the State's request for an appeal.

On November 9, 2012, defense counsel did not appear for the scheduled hearing, although Armstead was present.[45]  Instead, Armstead's counsel wrote a rather impertinent letter to the state trial court explaining her absence, chastising the court for its prior rulings, and questioning why

---

[38]St. Rec. Vol. 1 of 7, Minute Entry, 9/25/12; Motion to Dismiss, dated 6/7/12.

[39]St. Rec. Vol. 1 of 7, Minutes, 6/21/11; Minutes, 7/14/11.

[40]St. Rec. Vol. 3 of 7, 4th Cir. Order, 2011-K-0865, 7/12/11.

[41]*State v. Armstead*, 67 So.3d 474 (La. 2011); St. Rec. Vol. 4 of 7, La. S. Ct. Order, 2011-KK-1541, 7/14/11.

[42]St. Rec. Vol. 1 of 7, Minute Entry, 9/25/12; Motion to Quash, dated 9/28/12.

[43]St. Rec. Vol. 1 of 7, Minute Entry, 9/25/12; St. Rec. Vol. 2 of 7, Hearing Transcript, 9/25/12.

[44]St. Rec. Vol. 1 of 7, Minute Entry, 9/25/12; Minute Entry, 11/9/12.

[45]St. Rec. Vol. 1 of 7, Minute Entry, 11/9/12; St. Rec. Vol. 2 of 7, Hearing Transcript, 11/9/12.

she and Armstead had to appear for a hearing after the Court already granted the motion to quash.[46] In addition, defense counsel indicated that, if the state trial court reversed its prior ruling or the State refiled the charges, that the matter be set for trial to avoid further inconvenience for Armstead. The state trial court reconsidered its ruling and denied the motion to quash.

Apparently, Armstead believes that his counsel should not have asked for a trial setting if the motion to quash was denied and instead should have sought review of the state trial court's reconsideration and denial of the motion to quash. However, the matter was in fact reviewed twice on direct appeal.

First, the Louisiana Fourth Circuit addressed this issue *sua sponte* on its errors patent review. The Court held that the state trial court was divested of jurisdiction when it reconsidered the motion to quash or conduct the trial and vacated the conviction and sentence.[47] However, the Louisiana Supreme Court reinstated the conviction and sentence because the state trial court erred in considering an <u>oral</u> motion to quash and never lost jurisdiction.[48]

In its second appeal opinion that followed, the Louisiana Fourth Circuit similarly held that the trial court correctly denied the motion to quash. The Court thoroughly reviewed the pretrial proceedings and specifically found that the institution of the charges against Armstead were timely.

Based on those proceedings and the rulings of the higher courts, Armstead suffered no prejudice from his counsel's failure to seek pretrial review of the state trial court's order. Armstead

---

[46]St. Rec. Vol. 1 of 7, Letter from Defense Counsel, 11/7/12.

[47]*Armstead*, 144 So.3d at 66; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2014-KA-0036, 6/4/14.

[48]*Armstead*, 147 So.3d at 162; St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2014-K-1365, 9/12/14.

is unable to show that the Louisiana Fourth Circuit would have reached a different conclusion had it reviewed the same claim in a pretrial writ application brought by his trial counsel.

For these reasons, Armstead's counsel was not deficient for failing to bring the meritless claim in an earlier proceeding. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument thus cannot form the basis of a successful ineffective assistance of counsel claim"); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.")  Armstead therefore has not established that the denial of relief on this claim was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this issue.

### F.    Trial Court's Jurisdiction (Claim No. 6)

Armstead asserts that the state trial court was without jurisdiction to grant any relief to the State's from the denial of the motion to quash after it granted the State's motion for leave to appeal. He argues that under Louisiana law, the state trial court was divested of jurisdiction by the appeal and had no authority to reconsider its granting on the motion to quash.

As mentioned above, the Louisiana Fourth Circuit first addressed this issue sua sponte as an error patent in its first opinion on direct appeal that was later reversed.[49]  More specifically, the Court held that the state trial court was divested of jurisdiction under La. Code Crim. P. art. 916 when it granted the State's motion to appeal and had no jurisdictional authority to reconsider its ruling granting Armstead's motion to quash or take any other action after that ruling.

The Louisiana Supreme Court disagreed and adopted the well-reasoned dissent to the Louisiana Fourth Circuit's opinion.[50]  In the dissenting opinion, the circuit judge first reasoned

---

[49]*Armstead*, 144 So.3d at 66; St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2014-KA-0036, 6/4/14.

[50]*Armstead*, 147 So.3d at 162; St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2014-K-1365, 9/12/14; *Armstead*, 144

that the appellate court erred because the matter was not reviewable as an errors patent.  Second, the dissent resolved that under Louisiana law, the oral motion by Armstead's counsel was the equivalent of no motion at all and could not be and should not have been considered by the state trial court.  Because there was no proper motion, the State had nothing to appeal and the state trial court erred in granting the motion to appeal.  Further, the trial court's actions in ordering the defense to file a written motion and allowing the State to file an opposition suggested that the state trial court kept the matter under advisement.  Finally, the dissent noted that the jurisdictional issue was not properly preserved for appeal.  As noted above, when the matter was considered on appeal, the Louisiana Fourth Circuit found the denial of the motion to quash to have been proper because the felony carnal knowledge charge was timely.  That ruling was confirmed by the Louisiana Supreme Court.

Armstead later asserted this jurisdictional issue in his state application for post-conviction relief.  Ultimately, the Louisiana Supreme Court denied relief finding the claim repetitive of the claim addressed on direct appeal.[51]

As already discussed in this report, this Court does not consider a state court's application of state law or determination of state-law questions.  *Swarthout*, 562 U.S. at 219; *Wilkerson*, 16 F.3d at 67.  It is not the function of this habeas court to determine whether the state trial court divested itself of jurisdiction under state law.

Instead, if the petitioner demonstrates that an error under state law occurred, a federal court may grant habeas relief if the error resulted in the violation of a specific federal constitutional right

---

So.3d at 74 (McKay, C.J. dissenting); St. Rec. Vol. 5 of 7, 4th Cir. Opinion, 2014-KA-0036, p. 15, 6/4/14.

[51]As noted previously, the finding of repetitiveness under La. Code Crim. P. art. 930.4(A) does not prevent this Court from considering the reasons assigned in the appellate decisions.

or rendered the state court proceeding fundamentally unfair.  *See Gochicoa*, 118 F.3d at 446.  To do so, the petitioner must demonstrate that the error had a substantial and injurious effect on the outcome of the proceeding.  *See Fry*, 551 U.S. at 112.

Once again, Armstead has failed to prove an error was made under state law.  First, the Louisiana Supreme Court decreed that the trial court was not divested of jurisdiction when it improvidently granted the State's motion to appeal the granting of the oral motion to quash.  The higher state courts later resolved that the state trial court "correctly" denied the motion to quash as meritless because the felony carnal knowledge charge was timely.  For these reasons, Armstead has failed to establish that a state law error occurred in his proceedings.

He likewise has presented no federal constitutional violation arising from the actions of the state courts.  The record is clear that Armstead was provided significant review of the jurisdictional authority of the state trial court and the propriety of the denial of his motion to quash.  He has pointed to nothing to demonstrate that he was denied a fair hearing on any aspect of his claims, and the record reflects none.

For these reasons, the state courts' denial of relief was not contrary or an unreasonable application of federal law.  Armstead is not entitled to relief on this claim.

## VI.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Randolph Armstead's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[52]

New Orleans, Louisiana, this 17th day of May, 2019.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[52]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.